MHN

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANI ALLEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09 CV 5713 |
| HSBC – NORTH AMERICA (U.S.) RETIREMENT INCOME PLAN AND HSBC NORTH AMERICA HOLDINGS PLAN ADMINISTRATIVE COMMITTEE, | ) Judge Ronald A. Guzman<br>) Magistrate Judge<br>) Arlander Keys |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The instant litigation was brought as a result of the denial, by the HSBC North America Holdings Plan Administrative Committee (the "Committee"), of Mr. Lani Allen's claim for additional pension benefits. After an unsuccessful appeal of the decision, Mr. Allen sued the Committee and the benefit plan, HSBC – North America (U.S.) Retirement Income Plan (the "Plan"), pursuant to § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking an order compelling the Plan to pay him benefits.

Presently before the Court is Defendants' motion in limine seeking a declaration that Plaintiff's claim is subject to an arbitrary and capricious standard of review and Defendants' motion for a protective order requesting that the Court forbid Plaintiff from conducting discovery beyond the administrative record. For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

Mr. Allen was born on November 8, 1943. He worked for Household Finance Corp. ("Household"), a subsidiary of Household International, Inc., from February 27, 1967, to November 8, 1997. Because Mr. Allen had been an employee of Household before January 1, 1990, he was eligible to receive a subsidized early retirement benefit under the Plan after reaching his 50th birthday and completing 15 years of employment.[1] Mr. Allen retired effective December 1, 1997, the first day of the first month following his 54th birthday; he elected to receive his Plan benefit in the form of a lump sum. Mr. Allen's Plan benefit was calculated as a life annuity beginning December 1, 1997, in the amount of $1,734.09 per month. The benefit was converted to a lump sum in the amount of $287,269.35, using actuarial assumptions provided in the Plan. The sum was paid to Mr. Allen on December 19, 1997.[2]

On February 26, 1999, Mr. Allen was reemployed by Household. Upon reemployment, he received a letter from Jim Whittemore, Household's Assistant Vice President of Wholesale Acquisitions Processing, stating: "When you retire, . . . your pension benefit

---

[1] See page 11 of "Retirement Income Plan, for employees employed on or before December 31, 1989, Plan Boooklet," Defendants' Combined Motion for Protective Order and Motion in Limine, Exhibit B.
[2] Mr. Allen was also paid interest in the amount of $644.58 because his lump sum benefit was paid on December 19, rather than his annuity starting date of December 1. Hence, his total payment was $287,913.93.

2

will be calculated using all accumulated service and offset by the value of the pension benefit already paid to you." Mr. Allen also received the "Retirement Income Plan, for employees employed on or before December 31, 1989, Plan Booklet" which, in referring to reemployment, provided: "If you initially received a lump sum benefit, when you again retire, your lump sum benefit will be recalculated and the incremental portion will be paid to you."

Mr. Allen continued working for HSBC[3] through 2007. At his request, his Plan benefit was recalculated as of July 1, 2007, taking into account all of his years of employment between 1967 and 2007, and his final average salary determined as of June 2007. The recalculated benefit was determined to be a life annuity beginning July 1, 2007, in the amount of $3,043.35 per month. This benefit was converted to a lump sum in the amount of $467,723.79, using actuarial assumptions provided in the Plan. When Mr. Allen again retired, however, the benefit of $467,723.79 was not paid to him. Instead, Mr. Allen was informed by HSBC that his recalculated benefit ($467,723.79) was offset by the actuarially adjusted value of his 1997 benefit, which was $473,588.39. According to HSBC, because the entire 2007 benefit

---

[3] Household and its subsidiaries were acquired by the HSBC Group on or around March 28, 2003. In 2004, Household and its subsidiaries were reorganized as subsidiaries of HSBC North America Holdings, Inc. ("HSBC"). On November 9, 2004, the Household Retirement Income Plan was merged with the HSBC Bank USA Pension Plan and renamed the HSBC – North America (U.S.) Retirement Income Plan.

was offset by the 1997 benefit, no additional benefit was due Mr. Allen under the Plan.

In response, Mr. Allen asserted that only the unadjusted dollar value of his 1997 benefit—$287,269.35—and not the adjusted value—$473,588.39—should have offset his 2007 benefit. Consequently, he claimed that he was entitled to an additional payment from the Plan in the amount of $180,454.44.

On March 18, 2008, Mr. Allen filed notice of a claim for benefits. The Committee found that the adjusted offset was calculated properly, in accordance with applicable law. It determined that Mr. Allen was not eligible for any additional payment from the Plan and denied his claim. On July 22, 2008, Mr. Allen filed notice of appeal. At the time, Mr. Allen argued that (1) the Plan in effect when he received his 1997 benefit did not contain the language necessary to authorize the adjustment of his 1997 benefit to reflect the time value of money; (2) even if it did, the manner in which the Plan adjusted his 1997 benefit violates the Internal Revenue Code and ERISA; and (3) during his reemployment, he accrued an additional benefit in the amount of $1,309.26, payable monthly beginning July 1, 2007, and he was entitled to receive the lump sum present value of this amount. In response, the Committee again found that the offset was calculated properly, and that Mr. Allen was not eligible for any additional payment. Mr. Allen then brought this action pursuant

to Section 502(a) of ERISA.

**DISCUSSION**

I.  *Defendants' Motion in Limine*

Defendants contend that the benefit determination challenged herein is subject to an arbitrary and capricious standard of review.

Under *Firestone Tire & Rubber Co. v. Bruch*, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. 489 U.S. 101, 115, 109 S. Ct. 948, 956-957, 103 L. Ed. 2d 80, 95 (1989). Where the plan gives the administrator discretionary authority in both situations, review of the administrator's decision asks whether the decision was arbitrary and capricious. *See Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 363 (7th Cir. 2009). In this case, the benefit plan states: "Without limitation, the Administrative Committee shall have full discretionary authority to determine eligibility for benefits and to construe the terms of the Plan."[4] Ex. G P. 4, Plan Section A-11.3(B). Therefore, the standard of review to be applied to Mr. Allen's challenge to the Administrative Committee's benefit determination is arbitrary and

---

[4] Plaintiff's Memorandum in Opposition to Defendants' Motion in Limine and Protective Order, Exhibit G P. 4, Plan Section A-11.3(B).

capricious. In fact, Mr. Allen concedes as much. Consequently, Defendants' motion in limine is granted.

II. *Defendants' Motion for a Protective Order*

Defendants next contend that under an arbitrary and capricious standard of review, discovery is inappropriate, and that, consequently, the Court's review should be limited to the administrative record.

In *Semien v. Life Ins. Co. of N. Am.*, the Seventh Circuit held that, although discovery is normally disfavored in the ERISA context, additional discovery is appropriate in "exceptional cases," where the claimant has (1) identified a specific conflict of interest or instance of misconduct; and (2) made a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination. 436 F.3d 805, 814-15 (7th Cir. 2006). The court noted that imposing onerous discovery before an ERISA claim could be resolved would undermine one of the primary goals of the ERISA program: inexpensive and expeditious resolution of disputes over benefits. *Id.* at 815.

It is Mr. Allen's contention that *Metro. Life Ins. Co. v. Glenn* abrogated *Semien*, and that, therefore, discovery should be allowed in order to determine whether a conflict of interest affected Defendants' benefit determination. In *Glenn*, the Supreme Court stated that, "when judges review the lawfulness of

benefit denials, they will often take account of several different considerations of which conflict of interest is one." 554 U.S. 105, 128 S. Ct. 2343, 2351, 171 L. Ed. 2d 299, 310 (2008). Mr. Allen maintains that courts have interpreted this to mean that parties are "entitled to engage in discovery regarding the conflicts nature, extent and effect on the decision-making process." But rather than finding that its decision in *Semien* was abrogated, the Seventh Circuit has held that "the [*Glenn*] decision is best read as an extension of the Court's previous decision in *Firestone*," a case decided long before *Semien*. *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009).[5]

Since *Glenn*, the Seventh Circuit has not directly addressed the permissible scope of discovery in ERISA cases where the arbitrary and capricious standard of review is applied. District courts within the Seventh Circuit have been divided on this matter—that is, whether after *Glenn*, discovery is permissible where a possible conflict of interest exists. Some courts have concluded that *Glenn* abrogated the requirement in *Semien* that a claimant make an exceptional showing before obtaining discovery. *Baxter v. Sun Life Assur. Co.*, No. 09-CV-3818, 2010 U.S. Dist.

---

[5] In *Firestone*, the Supreme Court held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" 489 U.S. at 115 (citation omitted).

7

50375, at *15 (N.D. Ill. May 20, 2010). *See, e.g., Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 394-95 (S.D. Ind. 2009); *Anderson v. Hartford Life & Accident Ins. Co.*, 668 F. Supp. 2d 1129, 1131-32 (S.D. Ind. 2009); *Hughes v. CUNA Mut. Group*, 257 F.R.D. 176, 178-79 (S.D. Ind. 2009); *Fischer v. Life Ins. Co. of N. Am.*, No. 1:08-cv-0396-WTL-TAB, 2009 U.S. Dist. LEXIS 22487, at *6-8 (S.D. Ind. Mar. 19, 2009); *Gessling v. Group Long Term Disability Plan For Employees of Sprint/United Mgmt. Co.*, No. 1:07-cv-0483-DFH-DML, 2008 U.S. Dist. LEXIS 96623, at *3 (S.D. Ind. Nov. 26, 2008). Other courts have continued to apply *Semien*'s two-prong test in the wake of *Glenn*. *See, e.g., Ball v. Std. Ins. Co.*, No. 09-C-3668, 2010 U.S. Dist. LEXIS 50586, at *20 (N.D. Ill. May 17, 2010); *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399 (N.D. Ill. 2009); *Nash v. Life Ins. Co. of N. Am.*, No. 09-C-1357, 2009 U.S. Dist. LEXIS 36285, at *5-6 (N.D. Ill. Apr. 29, 2009); *Marszalek v. Marszalek & Marszalek Plan*, No. 06-C-3558, 2008 U.S. Dist. LEXIS 75319, at *6 (N.D. Ill. Aug. 26, 2008).

This Court finds that *Semien* continues to be the law. *Glenn* only considered examination of a conflict of interest—the procedure for doing so was established within this Circuit in *Semien*. The Seventh Circuit already contemplated consideration of conflict of interest when it imposed limitations on discovery

in *Semien*. Therefore, in accordance with *Semien*, in order for discovery beyond the administrative record to be allowed, the plaintiff must (1) identify a specific conflict of interest or instance of misconduct; and (2) make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination.

Here, Mr. Allen alleges that there is a conflict of interest because there is an overlap between the payor of benefits and persons responsible for deciding pension benefit claims. He claims that summary plan descriptions, letters to pension participants, informational fliers and brochures, individual benefit statements, among other things, should be discoverable, since they could be helpful in Plan interpretation and may reveal case-specific bias and inaccuracy on the part of Defendants. However, once an ERISA plan grants a plan administrator discretionary authority to evaluate claims, the plan administrator's motivations should not be questioned absent a prima facie showing of some misconduct or conflict of interest. *Semien*, 436 F.3d at 814 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981 (7th Cir. 1999)). *See also Perlman*, 195 F.3d at 981 ("We have no reason to think that [a plan administrator's] benefits staff is any more 'partial' against applicants than are federal judges when deciding income-tax cases."); *Mers v. Marriott Int'l Group*

*Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) ("We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict."); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) (citing *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1051 (7th Cir. 1987)) ("The impact on a company's welfare of granting or denying benefits under a plan will not be sufficiently significant as to threaten the [plan] administrators' partiality."). Mr. Allen fails to make an adequate showing of a specific conflict of interest or instance of misconduct, and, thus, does not satisfy the first prong of *Semien*'s two-part test. Consequently, Mr. Allen is not entitled to discovery outside the administrative record, and Defendants' motion for a protective order is granted.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion in limine and motion for a protective order. Plaintiff's discovery requests are stricken.

Date: August 24, 2010         E N T E R E D:

*[signature: Arlander Keys]*

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT