**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LANI ALLEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | 09 C 5713 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| HSBC-NORTH AMERICA (U.S.) | ) | |
| RETIREMENT INCOME PLAN and | ) | |
| HSBC NORTH AMERICA HOLDINGS | ) | |
| PLAN ADMINISTRATIVE | ) | |
| COMMITTEE, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lani Allen filed this action against defendants HSBC- North America (U.S.) Retirement Income Plan (the "Plan") and HSBC North America Holdings Plan Administrative Committee (the "Plan Committee") pursuant to § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that the Plan Committee did not correctly calculate his Plan benefits. Before the Court is defendants' motion to strike and plaintiff's and defendants' cross-motions for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court dismisses defendants' motion to strike as moot, denies plaintiff's motion for summary judgment and grants defendants' motion for summary judgment.

**Facts**

Allen worked for Household International, Inc. ("Household") from February 27, 1967 until November 8, 1997. (Defs.' LR 56.1 Stmt. ¶ 18.) When he retired, Allen elected to receive

a subsidized early retirement benefit under the Plan that, together with his regular Plan benefit, totaled a life annuity in the amount of $1,734.09 per month which, at Allen's election, was converted to a lump sum of $287,269.35 ("1997 Plan Benefit") using the actuarial assumptions provided in the Plan. (*Id.* ¶¶ 19-21.) If Allen had not been eligible for the subsidized early retirement benefit, the actuarially equivalent benefit payable beginning at his age would have been $881.72 per month as opposed to $1,734.09 per month. (*Id.* ¶ 22.) On December 19, 1997, the Plan paid the 1997 Plan Benefit, plus accrued interest of $644.58, for a total of $287,913.93 to Allen's individual retirement account. (*Id.* ¶ 23.) Allen has never contested the calculation of his 1997 Plan Benefit.[1] (*Id.* ¶ 24.)

On February 26, 1999, Household rehired Allen. (*Id.* ¶ 25.) On June 8, 2007, Allen retired for the second time. (*Id.*) His Plan benefit was recalculated by taking into account all of his "Years of Service" between 1967 and 2007 and utilizing his Final Average Salary as of June 2007. (*Id.*) Allen's monthly benefit, had there been no prior distribution in 1997, was calculated to be $3,043.35 ("2007 Plan Benefit"). (*Id.* ¶ 26.) Using the applicable interest rate provided in the Plan, Allen's monthly benefit calculation was converted to a lump sum of $467,723.79 ("2007 Pre-Offset Benefit Calculation"). (*Id.*)

The Plan Committee determined that, as required under the Plan, Allen's 2007 Pre-Offset Benefit Calculation must take into account (*i.e.*, offset) the actuarially equivalent value of

---

[1] In his response to defendants' statement of facts, Allen disputes that the 1997 Plan Benefit was correctly calculated, but does not provide a specific reference to the record as required by LR 56.1 and therefore, such fact is deemed admitted. LR 56.1(b)(3). Even if Allen complied with the local rule, any challenge to his 1997 Plan Benefit would fail for two additional reasons, the argument is: (1) waived because he failed to raise this claim in his administrative proceeding, *e.g.*, *Stark v. PPM Am., Inc.*, 354 F.3d 666, 671 (7th Cir. 2004) (collecting cases that explain why administrative exhaustion of ERISA claims is within the district court's discretion and favored by the Seventh Circuit), and (2) time barred based on the relevant statute of limitations. *Leister v. Dovetail, Inc.*, 546 F.3d 875, 878 (7th Cir. 2008) (explaining that the Illinois' ten-year statute of limitations for written contracts applies to ERISA claims under 29 U.S.C. § 1132 regarding unpaid benefits).

Allen's 1997 Plan Benefit (*i.e.*, the present day value of the 1997 Benefit of $287,913.93). (*Id.* ¶ 29.) As did the 1989 Plan, the 2005 Plan provided for the actuarial adjustment of any prior benefit payment when determining the appropriate offset against subsequent benefit calculations. (*Id.* ¶ 13.) Specifically, the Plan provides:

> Offset for Benefits Previously Paid. The calculation of reemployed Employee's benefit under this Section shall take into account all of the Employee's Benefit Service regardless of whether the Employee had begun to receive benefit payments under the Plan. However, the benefit calculated under this section shall be offset by the Actuarial Equivalent Value of benefits payments previously made to or for the Employee as provided in Section A-6.3

(*Id.*) Section A-6.3 provides, among other things, that where a participant previously received benefits under the Plan, "an appropriate actuarial adjustment shall be made to reflect the benefits previously earned or paid." (*Id.* ¶ 14.) More specifically:

> In General. Benefits payable under the Plan with respect to a period of Benefit Service (including benefits payable to a surviving Spouse, Beneficiary or an alternate payee) shall not duplicate benefits previously earned or paid under the Plan (or payable under a group annuity contract purchased with respect to the Plan or Merged Plan) with respect to the same period of Service and, if there could be such a duplication, an appropriate actuarial adjustment shall be made to reflect the benefits previously earned or paid.
>
> Method for Determining Offset. The amount of any reduction required under this Section shall be determined by the Administrative Committee on the basis of rules uniformly applied to similarly situated Participants and shall be determined with reference to the benefit payable under this Plan and such other plan as of the Participant's Normal Retirement Date as determined under this Plan.

(*Id.*) The Plan Committee used the interest rate for 30-year Treasury securities ("30-year Treasury rate") (the rate established by the Pension Benefit Guaranty Corporation prior to 1999) to both convert annuitized benefits to lump sum present values and to adjust earlier benefits payments that must be offset against later benefit calculations. (*Id.*) On December 28, 2006, this practice, as it applied to the actuarial adjustment of prior

3

distributions for purposes of determining the appropriate offset against later benefit calculations, was incorporated in the Plan's terms by amendment ("2006 Amendment") as follows: "In cases where a benefit that was previously paid in the form of a lump sum must be offset against a later recalculated Plan benefit, the offset shall be accomplished using the 'Applicable Interest Rate,'" which is defined as "the annual rate of interest on 30-year Treasury Securities [30-year Treasury rate] determined by the Secretary of Treasury." (*Id.* ¶¶ 16-17.)

Accordingly, using the 30-year Treasury rate, the Plan Committee actuarially adjusted Allen's 1997 Plan Benefit to reflect the time value of the money Allen received in 1997, and determined that, as of July 1, 2007, Allen's 1997 Plan Benefit had an actuarially adjusted value of $473,588.39 (the "1997 Actuarially Adjusted Plan Benefit"). (*Id.* ¶ 30.) Because the 1997 Actuarially Adjusted Plan Benefit exceeded the 2007 Pre-Offset Benefit Calculation of $467,723.79, the Plan Committee determined that Allen was due no additional benefits under the Plan. (*Id.* ¶ 32.)

On April 27, 2007, Allen contested the Plan Committee's decision in an email to Steve Gonabe, Vice President of HSBC's Personnel Department, which Gonabe forwarded to Cynthia Ryan, the Manager of HSBC's Pension Administration. (Pl.'s LR 56.1 Stmt. ¶ 33.) On May 3, 2007, Ryan responded in a letter to Allen explaining, among other things, that he had received a letter upon his reemployment stating that his "pension benefit will be calculated using all accumulated service and offset by the value of the pension benefit already paid to you." (*Id.*) She admitted that "value" was not defined in the letter, but that "the Plan is very specific as to how an Offset by 'Prior Distribution Under the Plan' is handled" and provided him with a

4

summary breakdown of his pension calculation, including copies of the relevant Plan provisions. (*Id.*) She explained that the benefit calculation must "take into account the value of the benefit [he] received 10 years ago since money received many years ago has a much larger current value" and that this was done by using "the 30 year Treasury rates for each intervening year." (*Id.* ¶ 34.)

On March 18, 2008, Allen took the next step, and filed an administrative claim with the Plan Committee asserting that only the unadjusted dollar value of his 1997 benefit- $287,269.35- and not the adjusted value-$473,588.39-should have offset his 2007 benefit. (*Id.* ¶ 35.) Specifically, he argued: (1) that the Plan violated the "definitely determinable" requirement under the Internal Revenue Code ("IRC"); (2) that the Plan's offset provisions violated the anti-forfeiture provisions of § 203(a) of ERISA; and (3) that the Plan violated the holding of *Miller v. Xerox*, 447 F.3d 728, 730 (9th Cir. 2006), which, according to plaintiff, held that it was "impermissible to offset a subsequent accrual of pension benefits . . . by more than the accrued benefit cashed out in a prior distribution." (Defs.' LR 56.1 Stmt., Ex. D, Pl.'s Claim Ltr., at 1.)

On June 2, 2008, the Plan Committee denied Allen's administrative claim. (*Id.* ¶ 37.) In its denial, the Committee explained: (1) that the 1997 Actuarially Adjusted Benefit exceeded the 2007 Pre-Offset Benefit Calculation because of the "heavy front-loaded nature of the Plan's benefit formula (*i.e.*, Allen accrued most of the benefit that he could accrue under the Plan prior to his 1997 early retirement); (2) that Allen received a substantial early retirement subsidy when he retired in 1997; and (3) the Plan and Committee consistently applied the methodology employed to actuarially adjust Allen's 1997 Plan Benefit prior to offset in connection with other participants' benefits calculations in similar circumstances. (*Id.* ¶ 38.)

5

On July 22, 2008, Allen appealed the Committee's denial. (*Id.* ¶ 39.) In his appeal, plaintiff stated "[t]here is no dispute regarding the calculation of [my] accrued benefit prior to the disputed offset." (*Id.*) "Our position is that applicable law (ERISA, the IRC, and *Miller v. Xerox Corp.*), prohibits the offset being implemented by the Committee which reduces Allen's accrued benefit" and that "the amendment to the offset provision into the plan on December 28, 2006 violated the prohibition of benefit cut-backs." (*Id.*) On September 22, 2008, the Plan Committee denied Allen's appeal, providing him with a detailed analysis of their decision including: "(1) The Plan as in effect at the time of both Allen's 1997 subsidized early retirement and his 2007 separation provided for the actuarial adjustment of prior distributions prior to offset against subsequent benefit calculations as to avoid duplication of benefits; (2) the actuarial adjustment of Allen's 1997 Plan Benefit was authorized by the Plan and did not violate governing law; and (3) the benefit calculation and actuarial adjustment had been properly performed." (*Id.* ¶¶ 41-42.) Allen then filed this suit alleging that: (1) the interest rate the Plan Committee used violated § 203(f) of ERISA; (2) the 2006 Amendment violated the anti-forfeiture provisions of § 203(a) of ERISA; and (3) he received Summary Plan Descriptions ("SPD") and other documents that caused him to believe that he would receive additional pension benefits at the end of his reemployment and/or never received documentation or notice that he would not and therefore, the Plan Committee should not be able to deny him such benefits. (*Id.* ¶ 46.)

## Discussion

### I.     Defendants' Motion to Strike & Deem Facts Admitted

Defendants' move to strike various fact statements set forth in plaintiff's statement of material facts and statement of additional facts because they do not comply with Local Rule 56.1 and cite material not contained in the record. LR 56.1 requires a party moving for summary judgment to file "a statement of material facts as to which [he] contends there is no genuine issue" that "consist[s] of . . . specific references to the affidavits, parts of the record, and other supporting material . . . [that] support the facts set forth in [each] paragraph." LR 56.1(a)(3). It also requires a party opposing summary judgment to file a response to the movant's fact statement that contains, in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3). All material facts set forth in the moving party's fact statement "will be deemed to be admitted unless controverted" by the opposing party's response. *Id.*

In ruling on every motion for summary judgment the Court, without prompting, conducts its own examination of the parties' LR 56.1 submissions to determine that they comply with the local rules and/or with Federal Rule of Civil Procedure 56. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) (explaining that the court may ignore additional facts when litigant fails to comply with LR 56.1). To the extent that portions of a party's submission do not comply with these rules, the Court has disregarded them. Therefore, defendants' motion to strike is dismissed as moot.

## II. Cross-Motions for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant meets this burden, the non-movant cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In considering the motion, the court must view all evidence in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

This Court has fully adopted, without objection, Magistrate Judge Keys' ruling that the standard to be applied to Allen's challenge of his benefit determination is arbitrary and capricious. *Allen v. HSBC N. Am. (U.S.) Ret. Income Plan*, No. 09 CV 5713, 2010 WL 3404966, at *2 (N.D. Ill. Aug. 24, 2010). Under this standard, "determinations will be overturned by the court only when they are unreasonable, and not merely incorrect." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000) (internal quotation omitted); *e.g.*, *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000) (explaining that under the arbitrary and capricious standard the plaintiff must show that the benefit determination was not only wrong, but "downright unreasonable"). Although this standard is the "least demanding form of judicial review" and is "extremely deferential," it is still "a review and not a rubber stamp." *Hupp v. Metromail Corp. Special Severance Plan*, 133 F. Supp. 2d 681, 688 (N.D. Ill. 2001) (quotation omitted). But the plan administrator's decision should not be overturned as long as: (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome"; (2)

8

the decision "is based on a reasonable explanation of relevant plan documents"; or (3) "the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (citation omitted). Additionally, under this standard, the Court's review is limited to the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999) ("Deferential review of an administrative decision means review of the administrative record.").[2]

Plaintiff presents three claims in his motion for summary judgment, two of which he is arguing for the first time: (1) that the Plan's use of the 30-year Treasury rate to calculate his retirement benefit violates § 203(f) of ERISA, 29 U.S.C. § 1053(f), as amended by the Pension Protection Act ("PPA") of 2006 which, according to plaintiff, requires plans to use a market rate of interest for distributions to eliminate the effects of "whipsaw" calculations; and (2) that plaintiff received SPDs and other documents that caused him to believe that he would receive additional pension benefits at the end of his reemployment. (Pl.'s Mot. Summ. J. at 10-11, 15-18.) Although not directly stated, plaintiff's second argument appears to be suggesting that defendants should be estopped from denying him benefits because the documentation he received stated that he was eligible for benefits and/or that he did not receive certain plan documents explaining that he was not eligible as required under § 104(b)(4) of ERISA, 29 U.S.C. § 1132(c).[3] Either way, defendants argue that plaintiff waived these arguments because

---

[2] To the extent plaintiff argues that the Court should view documents outside the administrative record, such argument is waived because he never objected to Magistrate Judge Keys' Report and Recommendation governing this issue, which was adopted by the Court in full.

[3] To bring a claim for estoppel under ERISA, plaintiff must establish: (1) a knowing misrepresentation; (2) that was made in writing; (3) that plaintiff reasonably relied on to his detriment. *See Coker v. TWA, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999).

he never presented them to the plan administrator and, as such, has failed to exhaust his available administrative remedies. The Court agrees.

The rule is clear in this Circuit that district courts have discretion to require administrative exhaustion of ERISA claims. *See, e.g.*, *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 n.3 (7th Cir. 2002) ("This circuit has long recognized that district courts have discretion to require administrative exhaustion [of ERISA claims], and that we will overturn the district court . . . only for an abuse of discretion."). "The district court's discretion is disturbed only if the reviewing court is confident that the decision is obviously in error." *Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 825 (7th Cir. 1991); *see Stark*, 354 F.3d at 671 (affirming the district court's dismissal of an ERISA claim not properly presented to the administrative review board). As the Seventh Circuit has reiterated, this requirement "promot[es] non-adversarial dispute resolution," and the compilation of a complete record in preparation for judicial review. *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000); *see Stark*, 354 F.3d at 671 ("Exhaustion of plan remedies is favored because 'the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes.'" (internal quotation omitted)). Accordingly, many courts in the Northern District have refused to allow a plaintiff to raise ERISA claims, including estoppel claims that he did not raise as part of his administrative claim and/or appeal. *DeBartolo v. Blue Cross Blue Shield of Ill.*, 375 F. Supp. 2d 710, 714 (N.D. Ill. 2005) (refusing to allow plaintiff to raise arguments in the district court that he did not raise during his ERISA administrative appeals); *Jacobs v. Xerox Corp. Long Term Disability Income*

*Plan*, 356 F. Supp. 2d 877, 892-93 (N.D. Ill. 2005) (holding that plaintiff could not present his ERISA estoppel claim to the district court because he did not properly exhaust it before the administrative review board); *Bingham v. CNA Fin. Corp.*, No. 04 C 2581, 2004 WL 2390093, at *3 (N.D. Ill. Oct. 25, 2004) (holding that to avoid "rendering the exhaustion requirement meaningless," plaintiff was required to exhaust her estoppel claim in her ERISA appeals).

It is undisputed that plaintiff did not present a §203(f) ERISA claim (or even mention the word "whipsaw"), an estoppel claim or a claim that he did not receive certain plan documents, to the plan administrator. (Defs.' LR 56.1 Stmt. ¶ 39.; *id.* Ex. D, Pl.'s Claim Ltr., at 1.) In fact, the only argument plaintiff presented to this Court that he also presented to the plan administrator is that the Plan violated the anti-forfeiture provisions § 203(a) of ERISA.[4] With the exception of this claim, the Court finds that plaintiff has failed to properly exhaust his administrative remedies and therefore has waived his other arguments.

Even if, however, the Court found that administrative exhaustion was not required for plaintiff's § 203(f) ERISA claim, *see Janowski v. International Brotherhood of Teamsters, Local No. 710 Pension Fund*, 673 F.2d 931, 935 (7th Cir. 1982) (explaining that exhaustion of administrative remedies is only appropriate where it is necessary to develop a full factual record or to take advantage of an agency's expertise), *vacated on other grounds*, 463 U.S. 1222 (1983); *see also Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 361 (7th

---

[4] Although abandoned by plaintiff as an argument before this Court, defendants assert that plaintiff has no standing to bring, as he did in his administrative proceedings, a claim that the benefits of the Plan are not entitled to favorable tax treatment under the IRC because its benefits are not "definitely determinable." 26 U.S.C. § 401. The Court agrees. The Seventh Circuit has held that § 401 of the IRC does not create substantive rights either on its own or under ERISA that can be enforced by an individual in a private cause of action as a participant of a tax-qualified pension plan. *See Brengettsy v. LTV Steel (Republic) Hourly Pension Plan*, 241 F.3d 609, 612 (7th Cir. 2001). Therefore, even if plaintiff had presented this argument and even if the Court were to have addressed the argument on the merits, which it does not, it would have failed.

11

Cir. 2011), it fails on the merits for two reasons. First, § 203(f) aims to eliminate the effect of "whipsaw" calculations, which are used in cash-balance pension plans, not in the type of defined benefit plan at issue here. (Defs.' LR 56.1 Stmt. ¶¶ 19-21, 26); *see* PPA, Pub. L. No. 109-280, § 701 (codified at 29 U.S.C. § 1053(f)); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 757-58 (7th Cir. 2003) (explaining the difference between defined benefit plans and cash balance plans). As such, whipsaw calculations are inapplicable in this case. Second, the section of the PPA requiring plans to use a market rate of interest for lump-sum distributions, as opposed to the 30-year Treasury rate, applies to plan distributions made after December 31, 2007. *See* PPA, Pub. L. No. 109-280, § 302 (codified at 26 U.S.C. § 417(e)) (stating that amendments regarding market rate of interest are effective for years after December 31, 2007). Therefore, because plaintiff's distributions were made before this date, such provision is also inapplicable in this case. (Defs.' LR 56.1 Stmt. ¶¶ 23, 30, 32.)

      B.     **Anti-Cut Back Provision of ERISA**

Plaintiff argues that the 2006 Amendment, which provided that a Plan benefit previously paid in a lump sum must be offset against a later recalculated Plan benefit by using the 30-year Treasury rate to determine the present value of the previously paid benefit, violates the anti-cutback provision of ERISA, 29 U.S.C. § 1054(g) ("Anti-Cutback Rule"). The Anti-Cutback Rule provides "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 302(d)(2) or 4281." § 1054(g)(1).[5] To establish a violation of ERISA's Anti-Cutback rule one must show (1) that a plan was amended and (2) that the amendment decreased an accrued benefit. *See id.* "Accrued

---

[5] Neither party argues that either of these exceptions applies here.

benefit" means, "in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." § 1002(23).

In essence, plaintiff argues that calculating the future value of the lump sum he received in 1997 by using the 30-year Treasury rate violates the Anti-Cutback Rule by overstating the value of the lump sum, and thereby causing him to forfeit accrued benefits. The Court disagrees. The 2006 Amendment did not change a participant's entitlement to benefits under the Plan. It is undisputed that both before and after the 2006 Amendment, the Plan provided for the offset of benefits previously paid under the Plan and gave the Plan Committee the authority to determine the "appropriate actuarial adjustment" to account for the time value of money of the previously paid amount. (Defs.' LR 56.1 Stmt. ¶¶ 11-14.) Since 1999, the Plan Committee has made this adjustment by using the 30-year Treasury rate. (*Id.* ¶¶ 15-16.) Moreover, it is undisputed that the Plan has applied this rate to all participants who have received prior distributions in a consistent and nondiscriminatory manner. (*Id.*) The 2006 Amendment simply incorporated the use of the 30-year Treasury rate into the Plan's terms; it did not change any plan participant's entitlement to benefits, or even change the practice of the Plan Committee. (*Id.*) The result was the same before and after the amendment--previously paid benefits were adjusted to account for the time value of money with an interest rate determined by the Plan Committee. Therefore, plaintiff has failed to create a genuine issue of material fact that the 2006 Amendment forfeited certain Plan benefits.

## Conclusion

For the reasons set forth above, the Court dismisses defendants' motion to strike as moot [doc. no. 104] and plaintiff's motion for summary judgment [doc. no. 87] and grants defendants' motion for summary judgment [doc. no. 77].  This case is hereby terminated.

   SO ORDERED                     ENTER:   September 1, 2011

_____

**RONALD A. GUZMAN**

**District Judge**